## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| JASON MITCHELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:20 CV 979 CDP |
| | ) | |
| DON PHILLIPS AND TREVOR | ) | |
| SMITH,[1] | ) | |
| | ) | |
| Respondents. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the Court on the amended petition of Jason Mitchell for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On June 19, 2012, a jury convicted Mitchell of stealing over $25,000 in the Circuit Court of Cape Girardeau, Missouri (Cause No. 11CG-CR00224-01). On July 16, 2012, the trial court sentenced him to fifteen years in prison. Mitchell's conviction and sentence were affirmed on appeal. *State v. Mitchell*, 407 S.W.3d 664 (Mo. Ct. App. 2013); ECF 9-7.

---

[1] Since the filing of this petition, petitioner has been paroled. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent is the state officer who has custody. Therefore, Don Phillips, Chairman of the Division of Probation and Parole, and Trevor Smith, the parole officer responsible for supervising petitioner, are substituted in lieu of Terri Lawson as proper party respondents. *See* 28 U.S.C. § 2254, Rule 2(b), Advisory Committee Notes.

Mitchell sought discretionary relief in both the Missouri Court of Appeals and the Missouri Supreme Court.  The Missouri Supreme Court denied his application for transfer on October 1, 2013, and Mitchell did not file a petition for writ of certiorari in the United States Supreme Court.

On December 23, 2013, Mitchell filed a timely *pro se* motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15.  Retained counsel subsequently filed an untimely amended motion, and the motion court granted leave to amend.  After an evidentiary hearing, the motion court denied Mitchell's *pro se* post-conviction motion on February 21, 2018, concluding that the recently decided case of *Gittemeier v. State*, 527 S.W.3d 64 (Mo. banc 2017),[2] precluded him from considering an untimely amended motion filed by counsel.[3] ECF 9-14 at 43-61.

The Missouri Court of Appeals Eastern District affirmed the denial of Rule 29.15 relief on July 23, 2019.  ECF 9-18.  In rejecting Mitchell's appeal, the

---

[2] In *Gittemeier*, the Missouri Supreme Court held that the abandonment doctrine "does not apply" when movant is represented by retained counsel and, therefore, "cannot excuse retained counsel's untimely amended motion."  527 S.W.3d at 71.  The abandonment doctrine permits the motion court to accept an untimely filed amended motion for post-conviction relief where a movant has been abandoned by appointed post-conviction counsel.  *See Price v. State*, 422 S.W.3d 292, 298 (Mo. banc 2014).

[3] At the hearing on the motion, counsel orally withdrew all but one claim.  Counsel later withdrew from the case and new counsel entered an appearance.  New counsel subsequently attempted to amend the motion more than two and half years after the amended motion was filed to assert multiple new claims.  That motion to amend was denied.  However, the motion court considered and rejected all claims raised in defendant's original *pro se* filing.  ECF 9-14.

Missouri Court of Appeals concluded that Mitchell waived two of his arguments by not raising them in his *pro se* Rule 29.15 motion and refused to consider them. ECF 9-18.  The Missouri Court of Appeals issued its mandate on August 15, 2019. ECF 9-19.  The parties agree that Mitchell's petition, filed on July 27, 2020, is timely filed.

In his amended petition[4] for habeas corpus, Mitchell, through counsel, asserts five grounds for relief.  Three of his claims are procedurally barred and will be dismissed for that reason.  The Missouri Court of Appeals addressed Mitchell's remaining two claims and denied them on the merits.  Because the state appellate court's decision was not an unreasonable application of clearly established law and was not based on an unreasonable determination of the facts, I will deny Mitchell's petition for writ of habeas corpus.

## Background

The Missouri Court of Appeals described the factual and procedural background of this case as follows:

> Mitchell worked as a purchasing manager for the DeWitt Company ("DeWitt").  DeWitt makes landscaping material used for weed prevention, and Mitchell was responsible for purchasing fabric to be utilized in its production.  In his position as purchasing manager, Mitchell developed a relationship with Rajiv Toprani, owner of KT America.  Toprani's company

---

[4] The original petition is superseded by the filing of the amended petition and will be denied as moot.  *In re Wireless Tel. Fed. Cost Recovery Fee Litig.*, 396 F.3d 922, 928 (8th Cir. 2005). However, the Court notes the only difference between the two petitions is that the amended petition has attached exhibits in support of Mitchell's claims.

supplied fabric to DeWitt for production of the landscaping material.
Mitchell and Richard Potter, the chief financial officer of DeWitt, ultimately
discussed Toprani's desire to expand his business.  Potter and Mitchell
registered a fictitious named company called Global Census.  Mitchell
owned sixty percent of the company and Potter owned forty percent. Potter
also set up a bank account in Global Census's name.  Thereafter, in return
for increased orders Toprani would deposit a percentage of the invoice
amounts paid by DeWitt to KT America into Global Census' bank account.
DeWitt subsequently discovered the money being returned to Mitchell
through the deposits in Global Census' account, and Mitchell was ultimately
charged with the class B felony of stealing, pursuant to Section 570.030.1
RSMo (Cum. Supp. 2009).  Following trial, a jury convicted Mitchell of
stealing, and he was sentenced to fifteen years' imprisonment. Mitchell now
appeals.

*Mitchell*, 407 S.W.3d at 665; ECF 9-7.

## **Discussion**

In his amended petition for writ of habeas corpus, Mitchell raises five

grounds for relief:

(1) Mitchell was denied his Fourteenth Amendment rights to due process
and a fair trial when the trial court overruled his motion for judgment of
acquittal because the State failed to make a submissible case of stealing;

(2) Trial counsel was ineffective in failing to subpoena documents;

(3) Trial counsel was ineffective in failing to depose or adequately
investigate the State's witnesses and to discover an audio recording of their
prior inconsistent statements that would have supported Mitchell's theory of
defense;

(4) Trial counsel was ineffective in failing to inform Mitchell of a multi-tier
plea offer from which he would have selected one of the options and entered
a plea of guilty; and

4

(5) Mitchell was denied due process when the State failed to disclose *Brady*[5] material.

Mitchell requests an evidentiary hearing on his claims.

<u>Claims Adjudicated on the Merits: Grounds One and Two</u>

When reviewing a claim on the merits, federal habeas relief can be granted only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see Williams v. Taylor*, 529 U.S. 362, 379 (2000).  The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court.  *Id.* at 380–83. "A state court's decision is 'contrary to' clearly established Supreme Court precedent when it is opposite to the Supreme Court's conclusion on a question of law or different than the Supreme Court's conclusion on a set of materially indistinguishable facts."  *Carter v. Kemna*, 255 F.3d 589, 591 (8th Cir. 2001)

---

[5] *Brady* material refers to evidence that must be disclosed by the prosecution under the United States Supreme Court case of *Brady v. Maryland*, 373 U.S. 83 (1963).  "Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.'"  *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (quoting *Brady*, 373 U.S. at 87)).

(citing *Williams,* 529 U.S. at 412–13).  "A federal court may grant relief under the 'unreasonable application' clause if the state court correctly identified the governing legal principle, but unreasonably applied it to the facts of the particular case."  *Jackson v. Norris*, 651 F.3d 923, 925 (8th Cir. 2011) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  "A state court's application of clearly established federal law must be objectively unreasonable, and not merely incorrect, to warrant the granting of a writ of habeas corpus."  *Jackson*, 651 F.3d at 925 (citing *Bell*, 535 U.S. at 694).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Collier v. Norris*, 485 F.3d 415, 423 (8th Cir. 2007).  "[E]ven erroneous fact-finding by the [state] courts will not justify granting a writ if those courts erred 'reasonably.'"  *Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001).

The federal court is "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions."  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  To obtain habeas relief from a federal court, the petitioner must show that the challenged state court ruling "rested on an error well

understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)

(cleaned up).  This standard is difficult to meet.  *Id.* at 357-58.

A.      Ground One: Sufficiency of the Evidence

In Ground One, Mitchell argues that he was denied due process and a fair

trial when the trial court overruled his motion for judgment of acquittal because the

State failed to make a submissible case of stealing.  On direct appeal, the Missouri

Court of Appeals denied this claim as follows:

> In his first point on appeal, Mitchell claims the trial court erred in denying
> his motion for judgment of acquittal because the State failed to make a
> submissible case of stealing.  Mitchell contends the evidence was insufficient
> to show beyond a reasonable doubt that he appropriated the property of
> another without his or her consent.  Specifically he argues the money he
> received was not owned by DeWitt, and he should have been charged with
> commercial bribery instead of stealing.
>
> We review the trial court's decision to deny a motion for judgment of
> acquittal to determine whether the State presented sufficient evidence to
> make a submissible case.  *State v. Bayless*, 369 S.W.3d 115, 118 (Mo. App.
> W.D. 2012).  In determining whether there was sufficient evidence to
> support a conviction, we accept all evidence and reasonable inferences
> favorable to the verdict as true and we disregard evidence and inferences to
> the contrary.  *Id.*  The jury determines the weight and credibility of witness
> testimony, and we do not substitute our judgment for that of the jury.  *Id.*
> Our review is limited only to determining whether there was sufficient
> evidence from which a reasonable trier of fact could find the defendant
> guilty beyond a reasonable doubt.  *Id.*
>
> Mitchell was charged with stealing pursuant to Section 570.030.1.  Pursuant
> to the statute, a person commits the crime of stealing "if he or she
> appropriates the property or services of another with the purpose to deprive
> him or her thereof, either without his or her consent or by means of deceit

or coercion." Here, the State charged Mitchell with stealing without consent. In claiming there was insufficient evidence to support his conviction of stealing, Mitchell argues he should have been charged with commercial bribery pursuant to Section 570.150 RSMo (2000). However, as the State notes, the prosecutor has discretion to determine the charge to be made against a defendant. *State v. Murray*, 925 S.W.2d 492, 493 (Mo. App. E.D. 1996). According to Mitchell, there was insufficient evidence to support this charge because DeWitt did not own the money Mitchell received from KT America. We disagree.

Section 570.010(11) RSMo (Cum. Supp. 2002) states, in relevant part, that property is "of another" where the individual or corporation has a "possessory or proprietary interest therein . . . ." Here, Mitchell argues DeWitt did not own the money he received from KT America because it had been paid to KT America for fabric, and it then belonged to Rajiv Toprani as the owner of KT America. Toprani was simply giving Mitchell the money after the business transaction between DeWitt and KT America was concluded. However, this argument ignores the definition of property "of another" set forth in the statute. DeWitt had a proprietary interest in the percentage of the invoice returned to Mitchell from KT America, and there was sufficient evidence to establish this fact. Toprani, the owner of KT America, testified at trial that he believed the percentage of the invoice amount he returned to Mitchell through Global Census was going back to DeWitt. According to Toprani, he would have sold the product for that percentage less to DeWitt if he had known it was not being returned to the company. In addition, Larry DeWitt, the president and CEO of DeWitt, testified Toprani informed him he could have gotten the materials for less from KT America.

Based upon the foregoing evidence, the State presented proof that DeWitt had a proprietary or possessory interest in the money received by Mitchell to satisfy the requirement that the property stolen be "of another." *See* Section 570.010(11). Thus, there was sufficient evidence from which a reasonable juror could have found Mitchell guilty of stealing, and the trial court did not err in denying his motion for judgment of acquittal. Point one on appeal is denied.

*Mitchell*, 407 S.W.3d at 665-66; ECF 9-7.

The Due Process Clause prohibits the conviction of an accused "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In the context of deciding a § 2254 claim, the court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also Evans v. Luebbers*, 371 F.3d 438, 441 (8th Cir. 2004). The scope of habeas review of such a claim is "extremely limited." *Skillicorn v. Luebbers*, 475 F.3d 965, 977 (8th Cir. 2007). This means that "a reviewing court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (cleaned up).

This Court may grant federal habeas relief only if the Missouri Court of Appeals' determination that the evidence satisfied the sufficiency of evidence standard was "both incorrect and unreasonable" under *Jackson*. *Garrison v. Burt*, 637 F.3d 849, 855 (8th Cir. 2011).

Here, the state court reasonably determined that, viewing the evidence in the light most favorable to the verdict, there was sufficient evidence to support

Mitchell's conviction for stealing.  The jury heard evidence that DeWitt had a proprietary or possessory interest in the money being paid to Mitchell by Toprani from both Toprani and DeWitt president Larry DeWitt.  Richard Potter, accounting manager of the DeWitt Company, also testified that he was involved in "helping [Mitchell] steal from the Dewitt Company" by registering the "fictitious company" Global Census.  ECF 9-1 at 16-18.  Potter and Mitchell were both listed as owners of Global Census and profits were split 60% to Mitchell and 40% to Potter.  *Id.*  Potter further testified that payments from KT America were wired into a Bank of America account that he set up.  *Id.* at 20–21.  Potter admitted that he did not receive permission from Larry DeWitt to engage in this kickback scheme and that he believed DeWitt was unaware of any payments from KT America to Global Census.  *Id.* at 51.  Larry Dewitt testified that he had no knowledge of the scheme and would not have given Mitchell or Potter permission to engage in the kickback scheme.  *Id.* at 114–15.  Larry DeWitt told the jury that, upon being confronted with the kickback allegation, Toprani offered the DeWitt Company an instant 5% discount.  *Id.* at 115–16.  DeWitt stated that after they switched from Toprani the DeWitt Company experienced "big savings."  *Id.* at 117.

Two employees of the Dewitt Company then testified that Mitchell handled all purchases from KT America.  ECF 9-1 at 125–26.  Maria Alvey, a purchasing assistant to Mitchell, stated that she asked Mitchell why the company was

purchasing from KT America when other companies offered the same or better prices and more competitive order-fulfillment times. *Id.* at 126. She said that at times he would not respond and other times he would simply claim that the overall pricing with KT America was better. *Id.* at 127. Tim Meredith, the Vice-President of Sales, testified that Mitchell did not take any competitive proposals on fabric and that KT America was the sole vendor of that class of items. *Id.* at 134–35. Alvey also told the jury that Mitchell purchased items from KT America which the company could not even use and that after Mitchell left, the company realized instant savings by switching to other vendors. *Id.* at 127-128.

Toprani testified that in the beginning of the business relationship, KT America sold very few items to the DeWitt Company. ECF 9-1 at 90. He stated that Mitchell approached him and indicated that if he was willing to provide Mitchell a percentage of the sales invoice, Mitchell would direct orders from the company to KT America. *Id.* Toprani initially refused, but later agreed to a kickback of 1.5%. *Id.* at 90–91. Toprani indicated that once he agreed, the sales to the DeWitt Company increased to approximately seven or eight million dollars per year. *Id.* at 91. Toprani stated that at the beginning of each season he would receive a phone call setting the kickback request for all purchases made in that period. *Id.* at 94. Toprani testified that he was unaware that the money was not going to the DeWitt Company. *Id.* at 96.

After they discovered that law enforcement was investigating the kickbacks, Mitchell and Potter came to Clarksville, Tennessee, to discuss the issue with Toprani.  ECF 9-1 at 97.  Toprani testified that Mitchell and Potter told him that, if he was questioned by law enforcement, he should say that the payments were made for consulting fees.  *Id.*  Toprani stated that they then asked him to issue invoices for consulting fees.  *Id.*  Toprani testified that none of the challenged payments were made for consulting fees.  *Id.*  Instead, Toprani stated that he believed the payments were going back to the DeWitt Company and that he would have sold the items for less in the absence of the requested kickback because "every time we sold the goods, we would always take into consideration what was going to be the percentage on their invoice.  Every time."  *Id.*

There is ample evidence for a rational jury to infer that Mitchell took property in which the Dewitt Company had a proprietary interest.  In denying this ground on appeal, the Missouri Court of Appeals correctly identified the governing legal standards, and its determination that there was sufficient evidence to convict Mitchell of stealing was not an incorrect or unreasonable application of *Winship* and *Jackson*.  *See* 28 U.S.C. § 2254(d)(1).  As the appellate court's determination also did not involve an unreasonable determination of the facts in light of the evidence presented in the  state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference.

Mitchell's arguments that the appellate court should have decided the factual and legal issues differently are insufficient to meet the difficult standard of showing the state court ruling "rested on an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Metrish*, 569 U.S. at 357-58 (cleaned up).  Ground One of Mitchell's habeas petition is denied.

B.    Ground Two: Counsel's Failure to Subpoena Documents

In Ground Two, Mitchell alleges that his counsel provided ineffective assistance by failing to subpoena records that would have demonstrated that he "did not take anything of value from Dewitt that a jury could find him guilty of stealing."  ECF 2 at 15.

The Missouri Court of Appeals considered and rejected this claim on appeal of the denial of post-conviction relief as follows:

> To prevail on a claim of ineffective assistance of counsel, a movant must prove "by a preponderance of the evidence that (1) defense counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Hoeber v. State*, 488 S.W.3d 648, 655 (Mo. banc 2016), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If a movant fails to satisfy either prong of the *Strickland* test, he or she is not entitled to post-conviction relief. *Hoeber*, 488 S.W.3d at 655. To satisfy the performance prong, a movant must overcome the strong presumption that counsel's conduct was reasonable and effective by "pointing to specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Id*. To satisfy the prejudice prong, a movant must show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.

13

*Id*. A reasonable probability exists where there is a probability sufficient to undermine confidence in the outcome. *Id*.

In Point I, Movant argues trial counsel was ineffective for failing to subpoena certain documents he requested that would have supported his defense at trial. Specifically, Movant argues trial counsel's decision not to obtain these records could not have been reasonable trial strategy because trial counsel decided the documents would not support Movant's defense without knowing what the documents contained. We disagree.

"'To succeed on a claim of ineffective assistance for failure to investigate, a movant is required to: (i) specifically describe the information his attorney failed to discover, (ii) establish that a reasonable investigation by trial counsel would have resulted in the discovery of such information, and (iii) prove that the information would have aided or improved his position at trial.'" *Frazier v. State*, 431 S.W.3d 486, 494 (Mo. App. E.D. 2014), quoting *Cornelious v. State*, 351 S.W.3d 36, 46 (Mo. App. W.D. 2011). "Where a post-conviction claim is based on trial counsel's failure to investigate or call a witness at trial, proof of prejudice requires a persuasive connection between the absent testimony and a viable defense." *Martin v. State*, 526 S.W.3d 169, 194 (Mo. App. W.D. 2017).

"The selection of witnesses and evidence are matters of trial strategy, virtually unchallengeable in an ineffective assistance claim." *Covington v. State*, 569 S.W.3d 469, 475 (Mo. App. E.D. 2018). "[W]hen trial counsel believes a witness's testimony would not unequivocally support his client's position, it is a matter of trial strategy not to call him, and the failure to call such witness is not ineffective assistance." *Id*.

The records at issue in this case include a list of financial documents Movant sent to trial counsel by email prior to trial. Movant asserts these documents show DeWitt did not pay inflated prices for products ordered from KT. There is no dispute that Movant has specifically described the documents he alleges trial counsel failed to discover, and a reasonable investigation by trial counsel would have resulted in the discovery of these documents. Therefore, the only question is whether trial counsel's decision that the documents would not have aided or improved Movant's position at trial was a reasonable choice of trial strategy.

At the evidentiary hearing, trial counsel testified he had already received four Bankers Boxes full of discovery from the State, one of which was filled with invoices, bank statements, and other financial documents. Trial counsel explained that he did not subpoena the documents requested by Movant because he "wasn't convinced that gathering up all this kind of information was going to be beneficial in the long run given what this case was about." Trial counsel stated he "didn't think [the information] was going directly to what the theory of the defense was" and his opinion was that it was not "going to help us succeed." Trial counsel further explained "there wasn't any evidence that [Toprani] was padding his invoices to pay the kickbacks to [Movant]" and "obtaining additional invoices and having the accountant look at them could at most say the same thing that Toprani said at trial[.]"

Based on this testimony, the motion court concluded trial counsel was not ineffective for failing to subpoena the records requested by Movant because this was a reasonable choice of trial strategy, and Movant failed to establish prejudice because there was no evidence the records would have altered the outcome of the trial. After reviewing the record, we cannot say this conclusion is clearly erroneous. *See Covington*, 569 S.W.3d at 476 (where there is no reasonable probability that a potential witness's testimony would have altered the results of the trial, trial counsel's decision not to call the witness is sound trial strategy that did not prejudice Movant).

Although trial counsel did not independently obtain the records as requested by Movant, trial counsel had sufficient information from the Bankers Box full of financial documents to make a reasonable decision regarding whether the specific documents identified by Movant would aid Movant's defense at trial. The State's case did not depend on proving that KT was charging inflated prices to DeWitt. The fact that KT's prices were commercially reasonable was undisputed at trial based on Mr. Toprani's testimony that he was charging less than competitors and not inflating his prices to pay kickbacks to Movant. Therefore, documents confirming Mr. Toprani's testimony would not have undermined any part of the State's case and would have been cumulative to the uncontested testimony of Mr. Toprani.

Movant argues the trial court's decision is erroneous because trial counsel's decision not to subpoena the documents he requested could not have been a reasonable choice of trial strategy because trial counsel decided the documents were irrelevant without knowing their content. We disagree. As stated above, trial counsel had sufficient information available to him to

make a strategic decision regarding whether to subpoena additional financial documents based on the Bankers Boxes of invoices and other financial documents he received in discovery. The fact that KT was not charging DeWitt inflated prices was not a contested issue at trial, and the State's theory of the case did not depend on inflated prices. As the motion court noted, "Toprani testified [at trial] that he believed the prices charged to DeWitt were commercially fair and reasonable, and that they probably beat all of the competitors[; t]herefore], no further evidence needed to be presented at trial by the defense to establish that DeWitt Company was not paying KT excessive prices for materials."

For the foregoing reasons, we find the trial court did not clearly err in concluding trial counsel was not ineffective for deciding not to subpoena the records requested by Movant. Trial counsel's decision was a reasonable choice of trial strategy and Movant has failed to establish any prejudice from the failure to obtain these records. *See Covington*, 569 S.W.3d at 476. Point I is denied.

ECF 9-18.

Mitchell's ineffective assistance of trial counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test to determine when counsel's ineffective performance violates the Sixth Amendment. On the first prong, petitioner "must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The second prong requires petitioner to "show that the deficient performance prejudiced the defense." *Id.* To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is

a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In

applying *Strickland's* two prongs, the Supreme Court has cautioned that "[j]udicial

scrutiny of counsel's performance must be highly deferential," *id.* at 689, and that

reviewing courts should indulge a strong presumption that counsel's actions fell

within the "wide range of professionally competent assistance." *Id.* at 690.

"Taken together, AEDPA and *Strickland* establish a 'doubly deferential

standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012)

(quoting *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011)).  This means that Mitchell

must do more than "show that he would have satisfied *Strickland's* test if his claim

were being analyzed in the first instance." *Bell v. Cone*, 535 U.S. 685, 698-99

(2002) (cleaned up).  "Rather, he must show that the [Missouri Court of Appeals]

applied *Strickland* to the facts of his case in an objectively unreasonable manner."

*Id.* at 699.

The Missouri Court of Appeal's decision is not an unreasonable application

of  *Strickland*.  "Under *Strickland*, 'strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually

unchallengeable; and strategic choices made after less than complete investigation

are reasonable precisely to the extent that reasonable professional judgments

support the limitations on investigation.'" *Hinton v. Alabama*, 571 U.S. 263, 274

(2014) (quoting *Strickland*, 466 U.S. at 690–91).  "In other words, counsel has a

17

duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* (quoting *Strickland*, 466 U.S. at 691). Here, the Missouri Court of Appeals concluded that counsel's performance was not constitutionally deficient because he investigated the claim that KT America was charging an outsized price compared to competitors and, after reviewing the relevant information, made a reasonable decision that further investigation of these financial documents was unnecessary. ECF 9-18.

Mitchell has failed to demonstrate that this is an unreasonable application of *Strickland*. Although he argues that the appellate court's conclusion is not supported by testimony from trial counsel, this argument is refuted by the Missouri Court of Appeal's extensive reliance on quoted portions of trial counsel's testimony. ECF 9-18 at 8–9. Specifically, it found that counsel testified that "he did not subpoena the documents requested by Movant because he 'wasn't convinced that gathering up all this kind of information was going to be beneficial in the long run given what this case was about'" and that "he 'didn't think [the information] was going directly to what the theory of the defense was' and his opinion was that it was not 'going to help us succeed.'" *Id.* at 8-9 (alteration in original). As further found by the Missouri Court of Appeals, after reviewing some evidence, trial counsel realized "'there wasn't any evidence that [Toprani] was padding his invoices to pay the kickbacks to [Movant]' and 'obtaining

18

additional invoices and having the accountant look at them could at most say the same thing that Toprani said at trial[.]'" *Id.* (alteration in original).   As the appellate court's determination did not involve an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, *see* 28 U.S.C. § 2254(d)(2), the decision is entitled to deference.

Given this testimony, the Missouri Court of Appeals reasonably concluded that counsel's trial strategy was not ineffective because he had already obtained facts that led him to believe that the requested documents would not be helpful to the chosen theory of defense.   Contrary to Mitchell's assertion, trial counsel did examine evidence of price gouging and found that further investigation was unnecessary, and the appellate court's determination that this was not an unreasonable trial strategy is entitled to deference.[6]

The Missouri Court of Appeals also concluded that Mitchell could not demonstrate prejudice because these documents would not have assisted counsel in presenting a meritorious defense.   This is not an objectively unreasonable conclusion because whether KT America was charging more than its competitors was immaterial to the State's burden on the stealing charge at trial.   Moreover, the

---

[6] Mitchell's reliance on the dissenting opinion in *Chambers v. Armontrout*, 907 F.2d 825, 835 (8th Cir. 1990) is unavailing because here the appellate court explicitly found that counsel investigated before determining that the documents were unnecessary to his defense of the case.

Missouri Court of Appeals also found no prejudice because the evidence would have been merely cumulative of Toprani's testimony that he did not charge inflated prices to DeWitt.   The appellate court's determination is not objectively unreasonable as "the failure to present cumulative testimony is not contrary to, or an unreasonable application of, federal law."   *Winfield v. Roper*, 460 F.3d 1026, 1034 (8th Cir. 2006) (cleaned up).

For these reasons, the Missouri Court of Appeal's decision to deny relief on Mitchell's ineffective assistance of counsel claim is entitled to deference, and Ground Two of Mitchell's habeas petition is denied.

<u>Procedurally Defaulted Claims: Grounds Three, Four, and Five</u>

State prisoners must fairly present all claims to the state courts.  When a prisoner has gone through all stages of direct appeal and post-conviction proceedings without presenting a claim to the state courts, that claim is procedurally defaulted.  *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).  This means that a federal habeas court cannot hear the claim unless the prisoner demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (cleaned up).

Here, respondent argues that Mitchell procedurally defaulted his third, fourth, and fifth grounds for relief by failing to present them to the Missouri courts. Mitchell does not dispute that these claims were not properly presented but contends that his procedural default is excused by the ineffective assistance of post-conviction counsel under *Martinez v. Ryan*, 566 U.S. 1, 14 (2012).  In *Martinez*, the United States Supreme Court held that "ineffective assistance of postconviction counsel is cause to forgive procedural default of an ineffective-assistance-of-trial-counsel claim, but only if the State required the prisoner to raise that claim for the first time during state postconviction proceedings." *Shinn v. Ramirez*, 142 S. Ct. 1718, 1728 (2022) (cleaned up).

"Out of respect for finality, comity, and the orderly administration of justice, federal courts may excuse procedural default only if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Shinn*, 142 S. Ct. at 1733 (cleaned up).  To demonstrate cause, the petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate prejudice, the petitioner must show that the claimed constitutional violation "worked to his actual and substantial disadvantage." *Id.* at 494.  A showing that the errors at trial created a "possibility of prejudice" is not sufficient.  *Id.* (quoting *United States v. Frady*, 456 U.S. 152,

170 (1982)).  "If a prisoner fails to demonstrate cause, the court need not address prejudice." *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007).

With respect to the cause of default, "attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel." *Davila v. Davis*, 582 U.S. 521, 528 (2017) (citations omitted).  Prior to *Martinez*, the general rule was that the ineffective assistance of postconviction counsel could not constitute cause for procedural default because there is no Sixth Amendment right to postconviction counsel.  *Id.*  The Supreme Court created a narrow exception to this rule in *Martinez* and held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  566 U.S. at 17.

The *Martinez* exception applies where state law explicitly prohibits prisoners from bringing claims of ineffective assistance of trial counsel on direct appeal, and where the "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013).

22

A petitioner such as Mitchell claiming ineffective assistance of post-conviction counsel as the cause for his procedural default of his ineffective assistance of trial counsel claims must demonstrate the following: (1) the claim of ineffective assistance of trial counsel was a "substantial" claim; (2) the "cause" consisted of either "no counsel" or only "ineffective" counsel during the state collateral review proceeding; and, (3) the state collateral review proceeding was the "initial" review proceeding with respect to the "ineffective-assistance-of-trial-counsel claim." *Marcyniuk v. Payne*, 39 F.4th 988, 996 (8th Cir. 2022) (cleaned up). Mitchell meets the third part of the test with respect to Grounds Three and Four because under Missouri law, a post-conviction proceeding is the exclusive procedure for pursuing an ineffective assistance of counsel claim. *Moore-El v. Luebbers*, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15(a).

C.     Ground Three: Ineffective Assistance of Counsel for failure to depose witnesses and discover an audio recording

In Ground Three, Mitchell asserts he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments of the United States Constitution when trial counsel failed to depose or adequately investigate the State's witnesses and to discover an audio recording of their prior inconsistent statements that would have supported Mitchell's theory of defense. Mitchell argues that if counsel had deposed and/or adequately investigated Toprani, Larry DeWitt, and Meredith DeWitt, he would have obtained statements that

contradicted their trial testimony and/or discovered the audio recording statements made by Toprani.

The audio recording in question is a meeting between Toprani and members of DeWitt Company, including Larry, Tim, and Meredith DeWitt and Shelly DeLarosa. ECF 2-9. The recording is attached as an exhibit to the amended habeas petition and appears in the record as Document 2-9. The parties have not provided a transcript of the recording, but the Court has listened to it as it was produced as Exhibit 15 during the post-conviction motion hearing and is therefore part of the state court record.

On the recording, the DeWitts confront Toprani about the payments he was making to Mitchell through wire transfers to Global Census. Toprani denied that the payments were bribes. Instead, he claimed that the payments to Mitchell were for his numerous trips to India to help set up Toprani's manufacturing business, for consulting services, and a "finder's fee," although he could not state what Mitchell had recently "found" for KT America. Toprani stated he never charged DeWitt more because of the arrangement with Mitchell and then offered DeWitt a discount. Toprani refused to provide DeWitt invoices between Mitchell and KT America because Mitchell had threatened him.

During the evidentiary hearing held on Mitchell's post-conviction motion, counsel testified that part of his trial strategy was to argue that the money Mitchell

24

received from Toprani was not a kickback or bribe but compensation for

"consulting services" Mitchell provided to KT.  According to Mitchell, if trial

counsel had adequately prepared for trial, he would have discovered this audio

recording which would have supported this defense theory and impeached the

credibility of Toprani.  Mitchell argues that he is entitled to develop and present

this ground for relief on federal habeas review under *Martinez* because he raises a

substantial ground of ineffective assistance of trial counsel and postconviction

counsel was ineffective in failing to properly raise it.[7]  Mitchell further asserts that

because the claim is substantial, this Court should conduct an evidentiary hearing

to determine its merits.  ECF 22 at 8.

The Supreme Court recently held that under 28 U.S.C. § 2254(e)(2), "a

federal habeas court may not conduct an evidentiary hearing or otherwise consider

evidence beyond the state-court record based on ineffective assistance of state

postconviction counsel."  *Shinn*, 142 S. Ct. at 1734.  Instead, "a federal court may

order an evidentiary hearing or otherwise expand the state-court record only if the

prisoner can satisfy § 2254(e)(2)'s stringent requirements."  *Id.* at 1735.  Thus,

while *Martinez* can excuse procedural default and permit a petitioner to raise an

---

[7] Although the argument was raised in Mitchell's second amended Rule 29.15 motion, the post-conviction motion court refused to consider it under *Gittemeier*, 527 S.W.3d at 71.  This argument was also raised on appeal of the denial of Rule 29.15 relief.  The appellate court also refused to consider this claim for the same reason, concluding that it was not preserved for appeal because it was not raised in Mitchell's timely *pro se* Rule 29.15 motion.  ECF 9-18 at 11-12.

ineffective assistance of trial counsel claim in federal habeas, it does not permit factual development outside the state court record to prove that claim.

Consequently, for a claim raised under *Martinez* to warrant a hearing, the petitioner must meet the standard set out in § 2254(e)(2):

> If a prisoner has failed to develop the factual basis of a claim in State court proceedings, a federal court shall not hold an evidentiary hearing on the claim unless the prisoner satisfies one of two narrow exceptions, *see* 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence by clear and convincing evidence.  § 2254(e)(2)(B).  In all but these extraordinary cases, AEDPA bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.

*Shinn*, 142 S. Ct. at 1728 (cleaned up).  The two "narrow exceptions" are for claims based on (i) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (ii) "a factual predicate that could not have been previously discovered through the exercise of due diligence."  28 U.S.C. § 2254(e)(2)(i), (ii).

In *Shinn*, the Supreme Court "explicitly rejects the idea that a federal court may hold an evidentiary hearing to determine whether there is cause and prejudice."  *Marcyniuk*, 39 F.4th at 999 (cleaned up).  "[A] *Martinez* hearing is improper if the newly developed evidence never would entitle the prisoner to federal habeas relief."  *Id.* (quoting *Shinn*, 142 S. Ct. at 1739) (cleaned up).

Mitchell makes no argument that he can satisfy the narrow requirements of § 2254(e)(2), and the Court finds he cannot do so.  First, the factual predicate on

which Ground Three is based was previously discovered during post-conviction

proceedings at the latest[8] and was part of the public record in the case.  This is fatal

to his request for an evidentiary hearing.  Second, Mitchell cannot show that the

facts underlying this claim are sufficient to establish by clear and convincing

evidence that, but for constitutional error, no reasonable factfinder would have

found him guilty of the underlying offense.  His request for an evidentiary hearing

is denied.

To determine whether Mitchell's procedural default is excused, the Court

must determine if postconviction counsel was ineffective for failing to raise the

defaulted claim.  To demonstrate ineffective assistance of postconviction counsel

as the cause for his procedural default, Mitchell must first establish that the

underlying claim of ineffective assistance of trial counsel was a "substantial"

claim.  *See Marcyniuk*, 39 F.4th at 996.

"A substantial claim is one with some merit, and *Martinez*'s some-merit

requirement means that whether the claimant's trial counsel was ineffective must at

least be debatable among jurists of reason."  *Marcyniuk*, 39 F.4th at 996 (cleaned

up).  "Thus, to demonstrate that his ineffective assistance of trial counsel claim is

"substantial," [Mitchell] must show that it is at least debatable among jurists of

---

[8] As discussed below in connection with Ground Five, the existence of the audio recording was
disclosed by the prosecutor prior to trial, so the factual predicate was known before trial.

reason whether his trial counsel's performance was deficient and whether this deficient performance prejudiced him." *Id.* (cleaned up).

Here, this requires Mitchell to show that, by failing to depose these witnesses and discover (and then use) this audio recording, trial counsel's performance fell below the constitutional standard of competence, and prejudice resulted. *See Marcyniuk*, 39 F.4th at 996. To establish prejudice, Mitchell "must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Shinn*, 142 S. Ct. at 1733 (cleaned up). Thus, Mitchell must establish a reasonable probability that, but for trial counsel's failure, he would not have been found guilty of stealing.

Mitchell cannot meet this standard because he was not prejudiced by trial counsel's alleged error. Toprani testified that after law enforcement began investigating, Mitchell and Potter met with him and asked him to tell investigators that all of the money was for "consulting."   ECF 9-1 at 97. Mitchell also asked Toprani to fabricate evidence to support this lie. *Id.* Additionally, Toprani testified that none of the challenged payments were made for consulting fees. *Id.* Potter also testified that he had never consulted KT on anything. *Id.* at 50. In light of that testimony, even if counsel had deposed employees of the Dewitt Company, obtained the recording, and presented the recording as evidence to the jury, the

result of the proceeding would not have been different as this recording could be viewed by the jury as evidence that Toprani lied about the money as requested by Mitchell, consistent with Toprani's testimony.

Even if the recording could have been used to impeach Toprani as inconsistent with his testimony, the jury would have also heard Larry DeWitt challenge Toprani's version of events because Mitchell's airfare and expenses were paid by the DeWitt Company, not Toprani, when Mitchell was supposedly "consulting" for Toprani.  ECF 2-9 Part 1.  Moreover, even though Toprani characterized the payment as a finder's fee, he could not identify what the fee was actually for, further undermining the truth of his statement and reinforcing Toprani's testimony that the characterization of the payments as "consulting fees" was a lie concocted by Mitchell in an attempt to conceal his crime.  *See id.* Toprani also stated that he considered Mitchell to be the buyer and that he was willing to do what he required to sell more product.  *Id.*  The jury would have heard Toprani refuse to provide Dewitt invoices between Mitchell and KT America because Mitchell had threatened him.   ECF 2-9, Part 2.

Moreover, Mitchell testified that he never told Larry DeWitt about this alleged consulting arrangement with KT America.  ECF 9-1 at 170.  At trial, Mitchell could not explain how he and KT decided his consulting fee or rate, nor

could he produce any records evidencing his alleged consulting relationship. *Id.* at 171-72.

In addition to Toprani, Mitchell's co-conspirator Potter also testified at trial and admitted "helping [Mitchell] steal from the Dewitt Company" by registering the "fictitious company" Global Census. ECF 9-1 at 16-18. He also testified that Mitchell told him he should claim that the money was for consulting services if the arrangement was ever discovered, but Potter admitted that he had never consulted for Toprani and that the payments he received were not for consulting work. ECF 9-1 at 50-54.

Under these circumstances, Mitchell cannot demonstrate a reasonable probability that he would not have been found guilty of stealing if this recording had been played to the jury given the overwhelming evidence against him and the fact that the recording was equally (if not more) consistent with Mitchell's guilt and Toprani's testimony that Mitchell asked him to lie about the payments to conceal his crime.

Mitchell argues that the recording demonstrates that "DeWitt did not have anything of value taken from it" because Toprani states he never charged DeWitt more because of the arrangement with Mitchell. To the extent this is a rehashing of the argument regarding the sufficiency of the evidence, it fails for the reasons articulated by the Missouri Court of Appeals. Mitchell cannot have been

prejudiced by the failure to introduce evidence supporting meritless arguments.
*See Sittner v. Bowersox*, 969 F.3d 846, 853 (8th Cir. 2020) (failure to make
meritless arguments cannot support a claim of ineffective assistance).

Moreover, this testimony is not inconsistent with Toprani's testimony that
he never overcharged DeWitt because of the kickback scheme with Mitchell.  As
recognized by the Missouri Court of Appeals when affirming the denial of post-
conviction relief,  "The State's case did not depend on proving that KT was
charging inflated prices to DeWitt. The fact that KT's prices were commercially
reasonable was undisputed at trial based on Mr. Toprani's testimony that he was
charging less than competitors and not inflating his prices to pay kickbacks to
[Mitchell]."  ECF 9-18.  That Toprani's price was better than market price was
immaterial to the stealing charge because Toprani testified that it could have been
even better absent the kickback.  ECF 9-1 at 97 (Toprani: "Every time we sold the
goods, we would always take into consideration what was going to be the
percentage on their invoice.  Every time.").

Under these circumstances, Mitchell fails to demonstrate a reasonable
probability that he would have been found not guilty of stealing had counsel
deposed these witnesses and introduced this audio recording to the jury.   For these
reasons, Mitchell fails to establish that Ground Three raises a substantial claim of
ineffective assistance of trial counsel.  Mitchell has not shown cause and prejudice

under *Martinez* to excuse his procedural default of this claim.  The Court will

dismiss Ground Three as procedurally barred.

D.     Ground Four: Ineffective Assistance of Counsel for Failure to Convey Plea
       Offer

       In Ground Four, Mitchell asserts he was denied effective assistance of

counsel under the Sixth and Fourteenth Amendments of the United States

Constitution when trial counsel failed to inform him of a multi-tiered plea offer

which offered different plea options depending on the amount of restitution

Mitchell paid prior to sentencing.  The three options all required Mitchell to

plead guilty to a felony, with the possibility of reducing the charge from Class B

to Class C and possible recommended sentences ranging from a suspended four-

year sentence to a 15-year sentence depending upon whether Mitchell repaid all

the money, more than one hundred thousand dollars, or less than one hundred

thousand dollars.  ECF 9-25 at 14.

       This claim is procedurally defaulted because the Missouri Court of Appeals

determined that it had not been preserved for appellate review:

> Similarly, Movant's *pro se* motion also failed to include his argument in
> Point III, which asserted trial counsel was ineffective for "failing to inform
> him of the letter with the State's multi-tiered plea offer because [Movant]
> would have been willing and able to accept one of the plea offers on the
> letter[.]" The *pro se* motion alleged trial counsel was ineffective for
> convincing Movant to reject a plea deal of which he was aware, and does not
> allege either the existence of any "multi-tiered plea offer," or trial counsel's

failure to inform Movant of a plea offer from the State. Movant's failure to include these allegations in his *pro se* motion is fatal to this claim. *McLaughlin*, 378 S.W.3d at 340. As above, this claim was waived and cannot be considered on appeal. *See Gittemeier*, 527 S.W.3d at 71.

For the foregoing reasons, we find Points II and III are not preserved for appeal and are, therefore, dismissed.

ECF 9-18 at 12.  Mitchell does not dispute that the claim is procedurally defaulted but argues that it is "substantial" under *Martinez* and post-conviction counsel was ineffective in failing to properly raise it.  He further contends that he is entitled to an evidentiary hearing on this claim.

With respect to his request for a hearing, Mitchell makes no argument that he can satisfy the narrow requirements of § 2254(e)(2).  The Court finds he cannot do so and is therefore not entitled to a hearing.

To determine whether Mitchell's procedural default is excused, the Court must determine if Mitchell has shown that post-conviction counsel was ineffective for failing to raise the defaulted claim.  To demonstrate ineffective assistance of post-conviction counsel as the cause for his procedural default, Mitchell must first establish that the underlying claim of ineffective assistance of trial counsel was a "substantial" claim.  *See Marcyniuk*, 39 F.4th at 996.

"A substantial claim is one with some merit, and *Martinez*'s some-merit requirement means that whether the claimant's trial counsel was ineffective must at least be debatable among jurists of reason."  *Marcyniuk*, 39 F.4th at 996

(cleaned up).  "Thus, to demonstrate that his ineffective assistance of trial counsel claim is "substantial," [Mitchell] must show that it is at least debatable among jurists of reason whether his trial counsel's performance was deficient and whether this deficient performance prejudiced him."  *Id.* (cleaned up).

Here, this requires Mitchell to show that trial counsel was ineffective for failing to inform him of the State's multi-tier plea offer and that prejudice resulted.  *See Marcyniuk*, 39 F.4th at 996.  To establish prejudice, Mitchell "must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage."  *Shinn*, 142 S. Ct. at 1733 (cleaned up).  Thus, Mitchell must establish a reasonable probability that, but for trial counsel's failure to inform him of the State's offer, he would not have gone to trial but instead would have accepted one of the multi-tier offers.

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process."  *Mayfield v. United States*, 955 F.3d 707, 711 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)).  "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."  *Id.* (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in

34

considering whether to accept it." *Id.* (quoting *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)).  "[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145.  Where "defense counsel allowed a formal plea offer to expire without advising the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.*

"To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Frye*, 566 U.S. at 147.  "Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law." *Id.*  "To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

Under *Frye* and *Lafler*, Mitchell bears the burden of demonstrating a reasonable probability he would have accepted the plea offer if counsel had not

breached a duty.  *See Frye*, 566 U.S. at 146-47; *Lafler*, 566 U.S. at 164; *Allen v. United States*, 854 F.3d 428, 432 (8th Cir. 2017) (citing *Frye* and *Lafler*).

After review of the record, the Court finds that Mitchell cannot establish either the deficient performance prong or the prejudice prong of *Strickland*. Although the post-conviction motion court ultimately decided that it could not review this precise claim under *Gittemeier*, it ruled on a related claim of whether trial counsel was ineffective for advising Mitchell to reject another plea offer made before trial.  In the course of the evidentiary hearing on the post-conviction motion, the motion court heard evidence of all plea deals offered by the prosecutor, including the multi-tier plea offer.  During the post-conviction evidentiary hearing, Mitchell's trial counsel testified that he recalled receiving the multi-tier plea offer from the prosecutor and it was his normal practice to forward any plea offer to his client.  ECF 9-25 at 176.  He further stated that while he did not have a specific memory of discussing the multi-tier plea offer with Mitchell, "any plea offer is going to be discussed with a client." *Id.* at 176.  Trial counsel testified that in his thirty years of practice, he had never once ignored a plea offer without first discussing the offer with his client. *Id.*

Mitchell also testified at the hearing.  He denied knowing about the multi-tier offer and claimed that he "would have considered" taking it had it been offered to him by counsel.  ECF 9-25 at 77.  However, Mitchell also testified that

he was willing to plead to commercial bribery, a misdemeanor under Missouri

state law . *Id.* at 123.  On cross-examination, Mitchell stated:

> [STATE]: At most commercial bribery, that's all you were willing to plead
> to?
>
> [MITCHELL]: If commercial bribery was brought to me, yes.
>
> [STATE]: Okay. So if commercial bribery was brought to you and that
> carried at most a misdemeanor, under no circumstances were you going to
> plead to a felony, isn't that right, sir?
>
> [MITCHELL]: Not if commercial bribery was brought up, no.

*Id.* at 123.

Following the hearing, the motion court denied Mitchell's claim that

counsel provided ineffective assistance in "convincing [Mitchell] to reject a plea

agreement that was offered before trial, when rejecting the plea offer was not in

my best interest."  ECF 9-16 at 275. The motion court found that trial counsel

"testified at the evidentiary hearing that it is his regular practice to make sure that

any plea offer is discussed with a client.  The Court does not believe that [trial

counsel] convinced [Mitchell] to reject a plea offer against his will.  Rather, this

Court finds and concludes that [Mitchell], under no circumstances, was going to

plead guilty to a felony, and the prosecuting attorney was not willing to offer him

a misdemeanor."  *Id.* at 275–76.

The motion court's factual and credibility determinations are presumed correct, *see* 28 U.S.C. § 2254(e)(1) and are dispositive of Ground Four.  The motion court specifically found, after hearing both witnesses testify, that it did not believe trial counsel failed to inform Mitchell of any plea offer (which included the multi-tier plea offer) and that the refusal of any plea offer was solely a result of Mitchell refusing to plead to anything more than a misdemeanor.  Because the multi-tier plea offer required Mitchell to plead to guilty to a felony, "under no circumstances" would Mitchell have accepted it.  These factual findings are fatal to both the performance and prejudice prongs of *Strickland.*

Mitchell urges the Court to disregard the motion court's factual findings as erroneous, but merely pointing to contrary evidence in the record does not provide this Court with the clear and convincing evidence required by 28 U.S.C. § 2254(e)(1) to disturb these factual findings.   *Wood v. Allen*, 558 U.S. 290, 302–03 (2010).  Mitchell's insistence that he would have accepted the offer does not meet this exacting standard, especially since he already made this claim to the motion court, which, after hearing him testify and judging his credibility, determined that Mitchell would never have accepted any offer which required him to plead guilty to a felony.  This Court is bound by the motion court's findings. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas

courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Mitchell cannot prove that his counsel provided constitutionally deficient performance because he cannot demonstrate that counsel failed to convey the multi-tiered plea offer.  Mitchell is also unable to demonstrate that he was prejudiced because the motion court determined that Mitchell would have never accepted any offer that was not a misdemeanor offer, which includes the multi-tier plea offer.  Mitchell therefore cannot demonstrate that he would have accepted the plea offer, foreclosing a finding of prejudice.

Mitchell has not established that defense counsel failed to render effective assistance with respect to a plea offer or that he was prejudiced as a result.  For these reasons, Mitchell fails to establish that Ground Four raises a substantial claim of ineffective assistance of trial counsel.  Mitchell also fails to demonstrate that he can satisfy the requirements of § 2254(e)(2).  As such, he is not entitled to an evidentiary hearing on his ineffective assistance of trial counsel claim related to the plea offer.

Mitchell has not shown cause and prejudice under *Martinez* to excuse his procedural default of this claim. The Court will dismiss Ground Four as procedurally barred.

E.     Ground Five: *Brady* violation

In his fifth claim, Mitchell alleges that the State failed to disclose material exculpatory and impeaching evidence regarding audiotapes of prior inconsistent statements of trial witnesses.  The recordings in question are those discussed above in connection with Ground Three.  The existence of the audio recordings was disclosed by the prosecutor prior to trial in 404 pages of discovery.  ECF 9-25 at 12, 17-18.  Page 182 of the discovery is a police report which lists "Reggie Toprani Recording" and describes a recording of a meeting between Reggie Toprani and members of the DeWitt Company made by Meredith DeWitt and transferred onto a compact disc.  ECF 2-8.  The contents of the recording are not summarized on the report.  ECF 2-8.  The compact disc was not included as part of the disclosures but was available if requested.  ECF 9-25 at 19.

Mitchell argues that this disclosure did not fulfill the State's obligation under *Brady*.  In support of this argument Mitchell relies on cites *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part and vacated in part on other grounds*, 561 U.S. 358 (2010), to argue that the State's production of an "open file" essentially hid this exculpatory evidence from him.  Respondent argues that this claim is procedurally defaulted because it was not raised either on direct appeal or in post-conviction proceedings.  Mitchell concedes the claim is defaulted but urges the Court to consider it under *Martinez*.  Respondent responds that Mitchell cannot invoke *Martinez* to avoid the procedural bar of this claim because

it could have been raised on direct appeal and is not the type of claim to which *Martinez* applies, citing *Davila v. Davis*, 582 U.S. 521, 529 (2017) (declining to extend *Martinez* to claims of ineffective assistance of appellate counsel on the ground that *Martinez* provided only a "narrow, equitable qualification" to the well-settled law of procedural default for claims of ineffective assistance of trial counsel).

In Missouri, known *Brady* claims are cognizable on direct appeal where the record is properly before the court or the facts are uncontroverted. *See State v. Parker*, 198 S.W.3d 178, 181 (Mo. Ct. App. 2006). Such is the case here, where the existence of the recording was disclosed before trial and the only issue relates to the adequacy of the disclosure. Therefore, *Martinez* does not apply to Mitchell's fifth claim, which remains procedurally defaulted.[9]  Because Mitchell has not shown adequate cause and prejudice sufficient to avoid the procedural bar, the Court will dismiss Ground Five as procedurally barred.

The claim is also meritless. "Under *Brady v. Maryland*, 'suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith

---

[9] Mitchell also cites *McCleskey v. Zant*, 499 U.S. 467, 501-02 (1991), in his attempt to avoid the procedural default, but it is equally unavailing.   As in *McCleskey*, here there is no evidence or allegation that the alleged *Brady* material was withheld from Mitchell such that he was precluded from raising the claim on direct appeal.

or bad faith of the prosecution.'"  *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016) (quoting *Brady*, 373 U.S. at 87).  "Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *United States v. Keys*, 721 F.3d 512, 520 (8th Cir. 2013) (cleaned up).  "A reasonable probability of a different result is shown when the government's failure to disclose undermines confidence in the outcome of the trial."  *United States v. Jeanpierre*, 636 F.3d 416, 423 (8th Cir. 2011) (cleaned up).

In *Strickler v. Greene*, 527 U.S. 263 (1999), the Supreme Court set out the three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  *Id.* at 281-82.

"*Brady* imposes no obligation on the State to reveal the exculpatory nature of the evidence being turned over but only requires complete disclosure to the defense . . . .  To rule otherwise would impose a duty on the prosecution to do the defense's work, and broaden *Brady* beyond its dictate of disclosure to include a requirement as to the manner of the disclosure."  *Odem v. Hopkins*, 192 F.3d 772, 777 (8th Cir. 1999).

Here the evidence was not suppressed.  The state disclosed the existence of a recording of a key witness prior to trial and it was made available upon request by counsel.  The amount of discovery produced was manageable in length and not of the type that could constitute "effective concealment" of exculpatory evidence.  As the *Skilling*[10] court recognized in rejecting defendant's claim that the "voluminosity of the government's open file prevented him from effectively reviewing the government's disclosure," 554 F.3d at 577,  "as a general rule the government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence" because it "is not required to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own."  *Id.* (cleaned up).

Mitchell also cannot demonstrate that the evidence is material under *Brady*. For the same reasons previously discussed in connection with Ground Three, Mitchell cannot demonstrate a reasonable probability that he would not have been found guilty of stealing if this recording had been played to the jury given the overwhelming evidence against him and the fact that the recording was equally (if not more) consistent with Mitchell's guilt and Toprani's testimony that Mitchell asked him to lie about the payments to conceal his crime.

---

[10] The government's open file in *Skilling* consisted of "several hundred million pages of documents."  554 F.3d at 576.  The pretrial discovery produced by the State in this case totaled 404 pages.

Because there was no *Brady* violation, Ground Five is also denied as meritless.

<u>Certificate of Appealability</u>

When a petitioner is denied a writ of habeas corpus under 28 U.S.C. § 2254, the petitioner may not appeal unless granted a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A).  To be entitled to a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right. § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997).  A showing is substantial when the issues raised are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings.  *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).  Because I find none of these to be the case, I will deny a certificate of appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jason Mitchell for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] is denied as moot.

**IT IS FURTHER ORDERED** that the amended petition of Jason Mitchell for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [2] is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a certificate of appealability.

A separate judgment in accordance with the Memorandum and Order is entered this same date.


CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 26th day of June, 2023.